Affirmed and Memorandum Opinion filed July 6, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01031-CR

___________________

 

Lamanuel James Fletcher, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 400th District Court

Fort Bend County,
Texas



Trial Court Cause No. 46,073A

 



 

 

MEMORANDUM OPINION

A jury
convicted appellant Lamanuel James Fletcher of robbery.  The jury found true an
enhancement paragraph alleging a prior conviction for robbery and assessed
punishment at sixty years’ confinement in the Institutional Division of the
Texas Department of Criminal Justice.  In two issues, appellant contends the
trial court erred by allowing the State (1) to question its witness on direct
examination regarding appellant’s statements related to alibi witnesses and (2)
to introduce evidence of an extraneous offense.  We affirm.

BACKGROUND

On the morning of November 14, 2006, Veniece Griffin,
the forty-nine year old complainant in this case, left her home to run errands
at the Fountains Shopping Center in Stafford, Texas.  After Griffin made a bank
deposit in the shopping center, she parked her car in front of an adjacent pet
store.

As Griffin walked toward the store, a car approached and
stopped in front of her.  When she tried to walk around the back of the vehicle
to enter the store, the driver got out of the car and ran toward her.  As Griffin
attempted to run away, the driver yelled “give me that purse” three times and
threw her to the ground, causing her to scrape her arm.  The assailant grabbed Griffin’s
purse, ran back to his car, and drove away.  Before the car sped away, Griffin noted
the license plate number.

Zeljka Gusinjac, a bystander, witnessed the robbery. 
She testified that upon exiting the pet store, she saw an African-American male
holding onto Griffin’s purse and dragging Griffin on the pavement.  She also
testified that after he took Griffin’s purse, the assailant ran back to his
car, a silver four-door Chrysler sedan, and drove off.  After the incident, Griffin
asked Gusinjac to enter the vehicle’s license plate number into her cell phone. 
At trial, Gusinjac positively identified appellant as Griffin’s assailant.

Houston Police Department (“HPD”) Officer James Leedom
testified that when he arrived at the scene, Griffin was extremely upset and told
him that she had been robbed.  After he determined that she did not have any
life-threatening injuries, Officer Leedom interviewed Griffin, who described her
assailant as a young African-American male and the vehicle as a gray Chrysler
Sebring with license plate number 732 PVC.  Officer Leedom also spoke with Gusinjac,
whose description of the assailant and the vehicle was nearly identical to
Griffin’s.  Officer Leedom broadcast the license plate number and a description
of the suspect and the vehicle.

After she spoke to Officer Leedom, Griffin went to
the police station and spoke to HPD Detective Rosa Linda Roman.  Griffin described
the assailant as an African-American male, between nineteen and twenty-four years
old, approximately 5’7” and 180 pounds, with short, dark hair.  Detective Roman
testified that she mistakenly stated in her offense report that Griffin had
described the suspect as light-skinned.  Detective Roman also testified that
she showed a photographic array to Griffin and Gusinjac, which included a photo
of the vehicle owner’s son but not appellant, and that neither woman identified
Griffin’s assailant among the photos.

At Detective Roman’s request, HPD Detective Alfonso
Ceballos interviewed Chris Craft, the vehicle’s registered owner, as part of
the investigation.  Based on the information he received from Craft, Detective
Ceballos determined that appellant had been in possession of the vehicle on the
day of the robbery.  During a videotaped interview, appellant admitted to
Detective Ceballos that he had been in possession of the Chrysler Sebring on
November 14, 2006, but denied that he had committed the robbery.  Detective
Ceballos testified that appellant also identified two alibi witnesses—a female
whom appellant identified by first name only and Vince Young.[1] 

Ceballos accompanied Griffin to a live line-up where
she positively identified appellant.  At Griffin’s request, each of the
individuals in the line-up then said “give me that purse” three times.  Griffin
testified that after hearing appellant’s voice, she was absolutely certain that
appellant was the person who had robbed her.

Following
an evidentiary hearing, and over defense counsel’s objections, the court determined
that evidence related to appellant’s prior conviction for theft of a person was
admissible to establish identity.  Vanessa Golden, a fifty-two year old woman,
testified that on the morning of November 14, 2006, she was entering an office
building when she was hit from behind and knocked down.[2]  She testified
that her assailant had driven his car to the front of the building and, after
knocking her down, grabbed her purse and sped away.  Golden chased him and was
able to note the license plate number of the car.[3]  Appellant was
indicted for robbery and subsequently entered a guilty plea to the reduced
charge of theft from a person.

ANALYSIS

A.    Appellant’s
Statements Regarding Alibi Witnesses

In his first issue, appellant contends the trial
court erred in allowing the State to question Detective Ceballos on direct
examination regarding appellant’s statements pertaining to alibi witnesses.  He
argues that the State’s questions constituted a comment on appellant’s failure
to testify and, thus, impermissibly shifted the State’s burden of proof to
appellant.

Outside the presence of the jury, the trial court
conducted an evidentiary hearing to determine the admissibility of, among other
things, appellant’s statements regarding alibi witnesses that he made during a
videotaped interview with police.  Following a lengthy discussion, and over
defense counsel’s objections, the trial court ruled that the evidence regarding
alibi witnesses was admissible under Texas Code of Criminal Procedure article
38.22, section 3, except as it may relate to extraneous offense evidence.[4]  

During the State’s
direct examination of Detective Ceballos, the following exchange took place:

[State]:  Okay.  Now, did the Defendant identify alibi
witnesses for him?

[Ceballos]:  He identified by first name a female.  I don’t
recall the first name.

[State]:  Did you ask him her last name?

[Ceballos]:  Not that I remember, no, sir.  And then he
also identified Vince Young.

[State]:  Okay.  Now, the name Vince Young could be a
common name, but I think it’s also a well-known name.  Did you clarify that was
he talking about “the Vince Young”?

[Ceballos]:  To us, it was my opinion he was talking about
Vince Young, the quarterback for the Tennessee Titans.

[State]:  Okay.  So, him and this female that he didn’t
fully identify could say that he wasn’t there at this date and time? 

[Ceballos]:  Yes, sir.

[State]: Now, did you have any way of figuring out who this
alleged female is?

[Ceballos]:  I did—we didn’t pursue it at the time.  He
didn’t offer up any other information.  I didn’t pursue it.  To me, it appeared
it was just something he just threw out there at that time.  He just said some
female.  So …

[State]:  Okay.  What about Vince Young?  Did you contact
Vince Young?

[Ceballos]:  No, sir, I didn’t contact Vince Young.

[State]:  Okay.  Have you ever been contacted by any people
in regards to that?

[Ceballos]:  No, sir.

Appellant argues that the State’s questions
constituted a comment on appellant’s failure to testify because only appellant
through his testimony could refute the State’s assertion that the alibi
witnesses did not exist.  We disagree.  For a statement to constitute a comment
on a defendant’s failure to testify, the language of the statement must be
either manifestly intended, or of such a character that the jury would
naturally and necessarily take it to be a comment on the defendant’s failure to
testify.  Livingston v. State, 739 S.W.2d 311, 337 (Tex. Crim. App.
1987).  For an indirect comment to constitute reversible error, it must call
for a denial of an assertion of fact or contradictory evidence that only the
defendant is in a position to offer.  Id.  It is not sufficient that the
language might be construed as an implicit or indirect allusion to the
defendant’s failure to testify.  Id. at 338.  If the language used can
be reasonably construed as referring to the appellant’s failure to produce
testimony or evidence from sources other than himself, reversal is not
required.  Id.  Here, the prosecutor’s questions were not intended to be
a comment on the defendant’s failure to testify, nor would the jury naturally
or necessarily take them as such.  Rather, the questions could reasonably be
construed as referring to appellant’s failure to produce testimony or evidence
from sources other than himself, i.e., the alibi witnesses.

Notwithstanding, even if the trial court erred in
permitting Detective Ceballos to testify regarding appellant’s statements, any
error was harmless.  Error in the admission of evidence is non-constitutional
error subject to a harm analysis under rule 44.2(b) of the Texas Rules of
Appellate Procedure.  See Tex. R.
App. P. 44.2(b); Rivera-Reyes v. State, 252 S.W.3d 781, 786 (Tex.
App.—Houston [14th Dist.] 2008, no pet.).  Under that analysis, we disregard
any non-constitutional error that does not affect substantial rights.  See
Tex. R. App. P. 44.2(b).  A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury’s verdict.  Morales v. State,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (quoting King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997)).  Appellate courts should not overturn
a criminal conviction for non-constitutional error if the court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or had but slight effect.  See Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).  In assessing the likelihood that the
jury’s decision was adversely affected by the error, the appellate court should
consider everything in the record, including any testimony or physical evidence
admitted for the jury’s consideration, the nature of the evidence supporting
the verdict, the character of the alleged error, and how it might be considered
in connection with other evidence in the case.  Motilla v. State, 78
S.W.3d 352, 355 (Tex. Crim. App. 2002).  Evidence of a defendant’s guilt is one
factor to consider in performing a harm analysis under rule 44.2(b).  See
id. at 358.  The reviewing court may also consider the jury instructions,
the State’s theory and any defensive theories, closing arguments, whether the
State emphasized the error, and even voir dire, if applicable.  See id. at
355.

Here, the evidence included Griffin’s positive identification
of appellant in a live line-up and at trial; Gusinjac’s in-court identification
of appellant; Detective Ceballos’s testimony that appellant admitted being in
possession of the getaway vehicle on the date of the offense; and Golden’s
testimony that appellant robbed her on the same day and in a nearly identical manner
as Griffin and in-court identification of appellant.  Further, the State’s
questioning of Detective Ceballos regarding appellant’s statements about alibi
witnesses was relatively brief, and the State did not emphasize that portion of
Detective Ceballos’s testimony or even refer to it in its closing argument.  Considering
the record as a whole, including the evidence of appellant’s guilt set forth
above, any trial court error in allowing that portion of Detective Ceballos’s
testimony did not influence the jury’s verdict.  See Tex. R. App. P. 44.2(b); Johnson,
967 S.W.2d at 417.  Thus, under the non-constitutional harm analysis, any error
in permitting the State to question Detective Ceballos regarding appellant’s
statements related to alibi witnesses was harmless.  See Tex. R. App. P. 44.2(b).  Issue one is
overruled.

B.     Admission
of Extraneous Offense Evidence

In his second issue, appellant contends the trial
court erred in allowing the State to admit evidence of an extraneous offense
during the guilt-innocence phase of the trial.  Specifically, appellant argues
that the probative value of the evidence was substantially outweighed by the danger
of unfair prejudice, thus making the evidence inadmissible under Texas Rule of
Evidence 403.

After hearing testimony from Golden and Officer
Guidry outside the presence of the jury, the court ruled that evidence related
to appellant’s prior offense of theft of a person was relevant to prove
identity in the present case.  Defense counsel objected under Rule 403 arguing
that even if the evidence was relevant, it was outweighed by the danger of
unfair prejudice.[5] 
The trial court overruled the objection.

Rule 403 provides, in pertinent part, that relevant evidence “may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice.”  Tex.
R. Evid. 403.  Thus, Rule 403 recognizes that relevance alone does not
ensure admissibility.  Gigliobianco v. State, 210 S.W.3d 637, 640 (Tex.
Crim. App. 2006).  Even when evidence is found to be relevant, when the
defendant makes a Rule 403 objection, the court has a non-discretionary
obligation to weigh the probative value of the evidence against the unfair
prejudice of its admission.  See Montgomery v. State, 810 S.W.2d
372, 389 (Tex. Crim. App. 1990) (op. on reh’g).

Factors to be considered in this balancing process
include: (1) the strength of the evidence in making a fact more or less
probable, (2) the potential of the extraneous offense evidence to impress the
jury in some irrational but indelible way, (3) the amount of time the proponent
needs to develop the evidence, and (4) the strength of the proponent’s need for
this evidence to prove a fact of consequence.  Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999).  In overruling such an objection, the
court is assumed to have applied a Rule 403 balancing test and determined the
evidence was admissible.  Hinojosa v. State, 995 S.W.2d 955, 957 (Tex.
App.—Houston [14th Dist.] 1999, no pet.).  Appellate review on the
admissibility of evidence is conducted under an abuse of discretion standard.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  An appellate court is
bound to uphold the trial court’s ruling regarding the admissibility of
evidence if it was within the zone of reasonable disagreement.  Id.

The first
factor we consider is the strength of the evidence in making a fact—here,
identity—more or less probable.[6]  The State elicited testimony showing that on the
morning of November 14, 2006, appellant approached Golden, a fifty-year-old
woman, as she was entering a building, hit her from behind, knocked her down,
grabbed her purse and then sped away in his car.  The assailant’s vehicle was
identified as light-colored, silver or gray, with the license plate number 732 PVC. 
The extraneous offense evidence is strikingly similar to the evidence in the
present case—the offenses were committed on the same date and within hours of
each other, the victims were middle-aged women who were entering a building
when they were knocked down, and the suspect grabbed their purses and sped away
in a gray car with the license plate number 732 PVC.  Thus, the charged and
extraneous offenses were identical in a number of key respects and thus highly
probative on the issue of identity.  See Lane v. State, 933 S.W.2d 504,
520 (Tex. Crim. App. 1996) (finding many similarities between charged and
extraneous offenses made extraneous offense evidence highly probative under
Rule 403).

The second
and third factors also weigh in favor of the trial court’s decision to admit
the extraneous offense evidence.  Although extraneous offenses always possess
the potential to influence the jury, any impermissible inference of character
conformity can be minimized through a limiting instruction.  Id.  In
this case, the trial court gave a limiting instruction in the jury charge which
was also read to the jury before it began its deliberations.  Further, our
review of the record reveals that the State did not spend an unduly lengthy amount
of time to develop evidence of the extraneous offense.

Finally, the
strength of the State’s need for this evidence also
supports the trial court’s decision to admit the evidence.  Appellant argues
that the State had other convincing evidence to establish the issue of identity
and, thus, the State’s need for the extraneous offense evidence was low.  It is
true that the State’s other evidence was fairly strong.  The State had Griffin’s
identification of appellant in a live line-up, Griffin and Gusinjac’s in-court
identification of appellant, a license plate number match, and appellant’s
admission in the police interview that he had been in possession of the suspect
vehicle on the date in question.  However, appellant challenged the probative
value of much of this evidence.  Despite the fact that the State had other
evidence, the extraneous offense evidence was not unfairly prejudicial.  See
Johnson v. State, 68 S.W.3d 644, 651–52 (Tex. Crim. App. 2002) (concluding
State’s need for extraneous offense evidence to establish identity was strong,
even though State had DNA evidence, fingerprints, appellant’s written
confession admitting guilt, and an oral confession, where defendant challenged
probative value of evidence).  Under these circumstances, the probative value
of the extraneous offense evidence outweighs any unfair prejudicial effect.  Because
the evidence was properly admitted, we overrule appellant’s second issue.

 

CONCLUSION

            We affirm the judgment of the trial court.

 

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

Panel consists of Justices
Yates, Seymore, and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1] Detective Ceballos
testified that it was absolutely clear that appellant was referring to Vince
Young, the quarterback for the Tennessee Titans.

 





[2] Golden was fifty years
old at the time of the incident.





[3] At the evidentiary
hearing, Officer Colleen Guidry, an HPD robbery investigator assigned to
investigate Golden’s case, testified that Golden reported the vehicle as
light-colored, silver or gray, with the license plate number 732 PVC. 





[4]
Article 38.22, section 3, provides, in relevant part:

. . . . 

(a) No oral or sign language
statement of an accused made as a result of custodial interrogation shall be
admissible against the accused in a criminal proceeding unless:

(1) an electronic recording,
which may include motion picture, video tape, or other visual recording, is
made of the statement;

(2) prior to the statement
but during the recording the accused is given the warning in Subsection (a) of
Section 2 above and the accused knowingly, intelligently, and voluntarily
waives any rights set out in the warning;

(3) the recording device was
capable of making an accurate recording, the operator was competent, and the
recording is accurate and has not been altered;

(4) all voices on the
recording are identified; and

(5) not later than the 20th
day before the date of the proceeding, the attorney representing the defendant
is provided with a true, complete, and accurate copy of all recordings of the
defendant made under this article.

Tex. Code Crim.
Proc. Ann. Art. 38.22, § 3 (Vernon 2005). 

 





[5] We note that although
defense counsel objected at trial to the admission of the extraneous offense
evidence under both Rules 403 and 404(b), on appeal he challenges only the
trial court’s ruling under Rule 403.





[6] Appellant argues that the
issue of identity was not seriously contested at trial.  To the contrary,
defense counsel raised the issue of identity in his opening statement,
attempted to discredit the witnesses’ identification of appellant as the
perpetrator on cross-examination, and argued the issue throughout his closing
argument.